UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JESSICA R., <br><br> Plaintiff, <br><br> v. <br><br> ACTING COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 23-cv-02011-TLF <br><br> ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule (MJR) 13. *See also* Consent to Proceed Before a United States Magistrate Judge, Dkt. 2. This matter has been fully briefed. *See* Dkts. 10, 12, 13.

The Court finds the ALJ harmfully erred in deciding that Plaintiff was not disabled, and accordingly REVERSES AND REMANDS the Commissioner's final decision in this matter.

PROCEDURAL HISTORY

Plaintiff filed an application for disability benefits under Title II on September 7, 2020. *See* Administrative Record ("AR") 115. She alleges disability beginning on August 12, 2020. AR 115. The date last insured is December 31, 2025. AR 115 The claim was denied initially on May 7, 2019, and upon reconsideration on September 21, 2021. AR

115. Plaintiff's requested hearing was held before ALJ Laura Valente. AR 115. The ALJ denied Plaintiff's claim by written decision on January 31, 2023. AR 115-126.

After the Appeals Council denied Plaintiff's request for review, she sought judicial review of the ALJ's decision in this Court.

BACKGROUND

The ALJ's decision found Plaintiff suffers from the severe impairments of Guillain-Barre syndrome (GBS), obesity, bulimia, anxiety disorder, and depressive disorder. AR 117 The ALJ found Plaintiff was not disabled because she had the following residual functional capacity ("RFC"):

> perform light work as defined in 20 CFR 404.1567(b) except she can sit 6 hours in an 8-hour workday; she can stand and or walk 6 hours combined in a n 8-hour workday; she can work superficially and occasionally with general public; she can work in same room with coworkers but not in coordination with them; she can adapt to simple, occasional and predictable routine workplace changes; and she must avoid hazards.

AR 119.

DISCUSSION

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id.*

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

Plaintiff's Opening Brief raises the following issues:

1. The ALJ discounted Plaintiff's testimony without legally supported reasons and without substantial evidence to justify rejecting her statements.
2. The ALJ's decision regarding the medical opinions is not supported by substantial evidence.
3. The ALJ failed to provide germane reasons supported by substantial evidence in assess the lay witness opinions.

    A. <u>Plaintiff's Statements Regarding Symptoms and Limitations</u>

Plaintiff assigns error to the ALJ's evaluation of her statements about her experience of symptoms and work-related limitations. In weighing a plaintiff's testimony, an ALJ must use a two-step process. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 217). First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of

the alleged symptoms. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). If the first step is satisfied, and provided there is no evidence of malingering, the second step allows the ALJ to reject the claimant's testimony of the severity of symptoms if the ALJ provides specific findings and clear and convincing reasons for rejecting the claimant's testimony. *Id. See Verduzco v. Apfel, 188 F.3d 1087, 1090* (9th Cir. 1999) (inconsistent testimony about symptoms is clear and convincing reason to discount subjective allegations). The ALJ is required to state what testimony they determined to be not credible and point to the evidence that undermines the plaintiff's credibility. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ's decision found Plaintiff's physical complaints were out of proportion to the objective medical evidence of record. AR 120. "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)).

The ALJ noted that, during a visit in October 2020 with Dr. Matthew Preston, the Plaintiff reported she was feeling "great." AR 121, 843. This was after Plaintiff was recently discharged from the hospital during which she had extremity pain, paresthesia and facial droop. AR 836-837. During this visit, Plaintiff still noted persistent numbness, tingling, and occasional lightheadedness, and Dr. Preston found abnormal findings in the cranial nerves, strength, reflexes, and heel and tandem walking. AR 844-45.

The ALJ also noted Plaintiff had been without her walker since her discharge from rehabilitation, was taking care of her child and puppy, reportedly going camping with her son, and had vacationed in Spain. An ALJ may discount a claimant's testimony

based on daily activities that either contradict their testimony or that meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). *See also Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir.2001) (noting that the "mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability").

Plaintiff stated, during March of 2021, that she sometimes lacked the energy even to feed herself. AR 1068. She described fatigue, dizziness, and numbness (AR1565) and noted an inability to drive or exercise due to dizziness (AR 1063). The record indicates the Plaintiff had a caregiver every day to help clean the house, bathe her, prepare food, and manage medications. E.g., AR 1027, 1398. She stated in November 2020 that she found it difficult to be home alone with her son without support. AR 837.

Although there are instances in the record where Plaintiff indicated she did not use a wheelchair or walker, there are many other instances where she stated her continued reliance on them. In October and November 2020, she noted using a wheelchair (AR 1025, 1027, 1029, 1329) and walker (AR 1025, 1027, 1029, 1398).

The ALJ's decision also found that because Plaintiff exercised for one hour, five to six times per week, her complaints were out of proportion to the objective medical evidence of record. AR 121. But this finding is not supported by substantial evidence; the record shows Plaintiff was prescribed a set of physical therapy exercises and she was attempting to comply as part of her treatment plan. AR 1338.

      Whether Plaintiff's travel history was a valid basis for discounting the credibility of her symptom testimony is a closer question. Plaintiff testified she traveled to Spain for a summer in 2022. That a Plaintiff is capable of going on vacation is not necessarily a clear and convincing basis for discounting the credibility of their testimony. *See Wilson v. Comm'r*, 303 Fed. Appx. 565, 566 (9th Cir. 2008) (evidence that plaintiff occasionally drove to Phoenix and took a vacation to Hawaii was not inconsistent with plaintiff's testimony because these activities were "sporadic and punctuated with rest"); *but see Tommasetti v. Astrue*, 533 F.3d 1034, 1040 (9th Cir. 2008) (plaintiff's ability to travel to Venezuela to care for her ailing sister for an extended period of time was a clear and convincing reason to discount the credibility of her testimony).

      Although Plaintiff in this case traveled and spent time in Spain, she testified that she experienced more numbness in her feet, and pin and needles in her forearms and arms. AR 188. The facts show Plaintiff's vacation is not indicative of regular travel or activities that would suggest Plaintiff's abilities are greater than alleged. *See Howard v. Heckler*, 782 F.2d 1484, 1488 (9th Cir. 1986) (the capacity to engage in periodic, restricted travel was not a clear and convincing reason to find plaintiff's testimony less credible).

      Accordingly, the ALJ failed to cite a clear and convincing reason supported by substantial evidence to find Plaintiff's testimony relating to her physical complaints less than fully credible.

      With respect to Plaintiff's testimony about her mental health, the ALJ found while Plaintiff had some limitations (i.e, chronic anxiety and depression, and an eating disorder), these limitations do not preclude all work activity. The ALJ noted that in March

2021, Plaintiff's eating disorder had "improved" and she decided to pursue treatment at the Emily Program. AR 122. However, Plaintiff explained in mid-June 2021 the program was actually resulting in more frequent and larger binging. AR 1060. The binging was "often nightly," and worse on weekends, with accompanying purging. AR 1215.

The ALJ also noted the record shows Plaintiff was "dealing with a variety of situational stressors including starting intensive outpatient treatment, putting her son in daycare, and a conflict with landlord," and despite these stressors, Plaintiff reported improvement in her symptoms. AR 122. The critical issue in a disability case is the claimant's "capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b). "Occasional symptom-free periods — and even the sporadic ability to work -- are not inconsistent with disability." *Lester v. Chater,* 81 F.3d 821, 833 (9th Cir. 1995).

Although the ALJ accurately noted that the record reflects some exacerbation of Plaintiff's in response to stress, the Court finds that, taken as a whole, the record suggests a continuum of serious mental health symptoms and limitations that wax and wane, and the record does not support a finding they are caused by situational stressors in Plaintiff's life. There is not sufficient evidence for the ALJ's decision that symptoms and limitations alleged by plaintiff as preventing work on a regular and continuing basis were contradicted by the medical record, or activities of daily living, or situational stressors.

I.     Medical Opinions

For applications filed after March 27, 2017, ALJs must consider every medical opinion in the record and evaluate each opinion's persuasiveness, with the two most important factors being "supportability" and "consistency." *Woods v. Kijakazi*, 32 F.4th

1 785, 791 (9th Cir. 2022); 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Supportability
2 concerns how a medical source supports a medical opinion with relevant evidence,
3 while consistency concerns how a medical opinion is consistent with other evidence
4 from medical and nonmedical sources. *See id.*; 20 C.F.R. §§ 404.1520c(c)(1), (c)(2);
5 416.920c(c)(1), (c)(2). Under the new regulations, "an ALJ cannot reject an examining
6 or treating doctor's opinion as unsupported or inconsistent without providing an
7 explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

    A. Dr. Lisa Brennan

Dr. Brennan found that working on a regular basis would cause Plaintiff's condition to deteriorate. AR 1375. Specifically, she found that if Plaintiff "pushes herself more than 50% of her current capabilities, she can actually cause more nerve problems." *Id.* Dr. Brennan stated that Plaintiff has to lay down several hours during the day due to fatigue, and it is difficult for Plaintiff to even make it to her doctor appointments; Plaintiff would likely miss 4 or more days of work per month. *Id.*

The ALJ found Dr. Brennan's opinion unpersuasive. Specifically, the ALJ states, "her opinion is unsupported by treatment notes, which indicate the claimant pain is well controlled with neuropathic pain medication. Her opinion is unsupported by physical exam findings. While she has some noted decreased sensation, she consistently demonstrates full strength of the upper and lower extremities, normal range of motion of the upper and lower extremities, and normal gait. Her opinion is also inconsistent with the claimant's ability to travel to Europe during the period at issue and care for her young son." AR 123.

The ALJ has a duty to set forth their reasoning "in a way that allows for meaningful review," *Brown-Hunter*, 806 F.3d at 492, and this requires building an "accurate and logical bridge from the evidence to [the ALJ's] conclusions." *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). In this case, the ALJ lists several reasons for finding Dr. Brennan's opinion unpersuasive, including Plaintiff's pain control, strength, and range of motion, but does not discuss findings in the physician's report relating to Plaintiff's fatigue. Further, as discussed above, Plaintiff's ability to travel and care for her child does not mean that her symptoms or limitations would allow for full-time work. Thus, the ALJ erred in evaluating Dr. Brennan's opinion.

B. Mark Magdaleno, MD and Norman Staley, MD

The ALJ found that Dr. Magdaleno's and Dr. Staley's opinions are supported by objective testing showing GBS and related treatment. While Plaintiff has some mild diminished sensation, she otherwise has within normal limit exams findings including strength, range of motion, and gait, and Plaintiff has remained functional even though her weight has remained in the obesity range. The ALJ also found their opinions are consistent with the Plaintiff's activities including working out at a gym, doing military HIIT workout, travel out of the country as well as her ability to care for her young son. AR 123.

The ALJ did not cite to any portion of the record to support these findings, and appears to have blurred the analysis of the supportability and consistency factors. In analyzing the supportability factor, the ALJ considers the extent to which a medical source supports his or her explanations and explains the objective medical evidence forming the basis for the opinion. *See* 20 C.F.R. § 404.1520c(c)(1) ("Supportability

examines the relevant objective medical evidence and supporting explanations presented by the source"), but the ALJ gave no discussion or assessment of what findings Drs. Magdaleno and Staley made, or whether they were consistent with the evidence .

Thus, the ALJ evaluation of Drs. Magdaleno and Staley's opinions were not supported by substantial evidence.

C.  Leslie Postovoit, PhD

The Court first notes that due to what appears to be a scrivener's error, the ALJ did not find the opinion of Dr. Postovoit either persuasive or unpersuasive. *See* AR at 124. The context of the ALJ's decision suggests a finding that the opinion was at least somewhat persuasive, but the sentence wherein such a finding would be is incomplete, missing the word "persuasive" or any variant thereof. The ALJ stated that Plaintiff's "mental health treatment notes indicate improvement in symptoms as supported by the claimant's own report such as purging less, improved mood and anxiety." AR 124.

Yet, the ALJ did not mention a review of the evidence, but simply stated there was partial support in the record without any references to facts or citations to the record. The ALJ erred in his evaluation of Dr. Postovoit's opinion because he did not articulate what Dr. Postovoit's was or how it was supported by the record.

II.  Lay Witness Testimony

Also, Plaintiff assigns error to the ALJ's assessment of lay witness opinions. Plaintiff's sister, Heidi Troy, and three friends, Juleen Cross, Wanda Sanchez, and Cassie Pena wrote in support of Plaintiff's disability. And, Plaintiff challenges the ALJ's assessment of Marie Hettick, a social worker.

The ALJ is "not required to articulate" how they evaluated evidence from non-medical sources such as educational personnel, public and private social welfare agency personnel, and other lay witnesses. 20 C.F.R. § 404.1502(e). Yet, the Ninth Circuit has suggested that its pre-2017 standard requiring "germane" reasons to reject lay witness testimony applies to an ALJ's evaluation of lay witness testimony post-2017. *Muntz v. Kijakazi*, No. 22-35174, 2022 WL 17484332, at * 2 (9th Cir. Dec. 7, 2022) (applying "germane reasons" standard to ALJ's evaluation of third-party function report from claimant's husband).

Ms. Hettick opined that Plaintiff struggled to attend sessions consistently and "displayed significant anxiety stemming from a history of trauma." AR 1658. Ms. Hettick found Plaintiff was "severely limited" in multiple areas including: her ability to understand and remember detailed instructions; to carry out detailed instructions an maintain attention and concentration for extended periods, to work in coordination with or proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and ability to adapt or manage oneself. AR 1657.

The ALJ found Ms. Hettick's assessment of marked to extreme limitations in several areas of mental functioning was unsupported by treatment notes, because the treatment notes showed improvement in symptoms with medication and therapy. The ALJ's decision further states, "mental status exams primarily show stable mood, focused attention, linear and logical thought process, and average to above average

intelligence. Her opinion is also inconsistent with the claimant's travel to Spain, care for her young son. In addition, she no longer has a caregiver." AR 123.

The ALJ did not cite to any portion of the record to support these findings. The record, on the contrary, shows that in November 2021 she noted that for 3 months she had been binging 3 times per week and purging 2 times per week, skipping meals, and she thought the program made her eating disorder worse. AR 1595. The record shows Plaintiff was agitated, depressed, angry, and complained of feeling tired all the time, mental fatigue, and decreased memory and focus. AR 1595-96. When Ms. Hettick began treating Plaintiff in August 2022, Plaintiff was feeling overwhelmed and exhausted, had pressured speech, loose organization, and poor judgment and insight. AR 1700-01.

Plaintiff's sister testified, "she can't get her son ready in the morning or prepare food for them and she gets extremely fatigued so little chores like laundry aren't possible for her to complete." She further stated that Plaintiff's "fingers and feet are numb and or tingly with shooting pain so it can be painful for her to text or use a computer and she just wants to lay down most of the day and rest because of the immense level of fatigue this disease causes and that fatigue is long term." AR 807. Plaintiff's friends testified that Plaintiff was not able to concentrate (AR 808), or stand for long (AR 796), and her body was "numb." AR 797.

There is not substantial evidence to support the ALJ's decision rejecting these lay witness statements, and this was harmful error. The ALJ discounted the lay witness opinions because they were inconsistent with the evidence. AR 124. Specifically, the ALJ states Plaintiff has full motion and normal gait, had controlled pain, did some

activities, and improved with treatment. The ALJ did not provide a germane reason to overlook the opinions relating to Plaintiff's fatigue and how her fatigue in general continuously affected her ability to sustain employment.

Thus, the ALJ erred in finding the lay witness statements unpersuasive.

III. Harmless Error

An error that is inconsequential to the non-disability determination is harmless. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). If the errors of the ALJ result in an RFC that does not include relevant work-related limitations, the RFC is deficient, and the error is not harmless. *Id* at 1052, 1054*; see also, Carmickle,* 533 F.3d at 1160; *Embrey v. Bowen,* 849 F.2d 418, 422-423 (9th Cir. 1988); *Stramol-Spirz v. Saul,* 848 Fed. Appx. 715, 718 (9th Cir. 2021) (unpublished). This causes incomplete hypothetical questions to be presented to the VE. *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012). And if, in determining a claimant is not disabled, the ALJ relies on the answers provided by the VE—as the ALJ did here—the ALJ's disability determination would necessarily be impacted. *See id*.

Here, the ALJ's errors in considering Plaintiff's testimony about her physical and mental health symptoms and limitations, lay witness testimony, and medical opinions are not harmless, as their proper evaluation could alter the ALJ's RFC assessment, hypothetical questions to the VE, and thus the ALJ's overall decision that plaintiff is not disabled.

V. Remand With Instructions for Further Proceedings

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664,

682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

The Ninth Circuit emphasized in *Leon* that even when each element is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. *Leon*, 80 F.3d at 1045.

The Court has found that the ALJ erred in evaluating medical opinion evidence and that this error impacts the ALJ's evaluation of plaintiff's subjective symptom testimony. The Court has also found that the ALJ erred in rejecting lay witness testimony. The record, therefore, is not free from important and relevant conflicts. Accordingly, this matter should be reversed for further administrative proceedings, including a *de novo* hearing.

CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ improperly determined Plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded for further administrative proceedings.

Dated this 9th date of October, 2024

Theresa L. Fricke
United States Magistrate Judge